UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

REY GARCIA,                          :
      Plaintiff,                    :
                                    :
      v.                            :        Case No. 3:19cv1484 (DJS)
                                    :
DR. ILONA FIGURA, ET AL.,            :
      Defendants.                   :

**INTIAL REVIEW ORDER RE: AMENDED COMPLAINT**

The plaintiff, Rey Garcia, is an inmate incarcerated at MacDougall-Walker Correctional

Institution ("MacDougall-Walker").  He initiated this action by filing a complaint under 42

U.S.C. § 1983 against Dr. Ilona Figura and Nurses Rose Walker and Gina Burns.  On May 21,

2020, the Court granted Garcia leave to file an amended complaint to eliminate Nurse Burns as a

defendant and to add five new defendants: Dr. Freston, Nurse Amy, Nurse Cara, Warden Barone,

and Chief of Regional Operations Kirsten Shea.  *See* Am. Compl., ECF No. 14.

The allegations in the amended complaint arise from injuries that the plaintiff suffered to

his left knee and right shoulder in October 2015 at Corrigan-Radgowski Correctional Institution

("Corrigan-Radgowski").  The plaintiff alleges that Drs. Figura and Freston and Nurses Amy and

Cara failed to provide him with timely and adequate medical treatment for those injuries during

his confinement at Corrigan-Radgowski from October 2015 to October 2018.  The plaintiff

alleges that Nurse Walker, Warden Barone, and Chief of Regional Operations Kirsten Shea

failed to provide him with, or facilitate the provision of, any medical treatment for his shoulder

or knee injuries during his confinement at MacDougall-Walker from November 2018 to March

2020.  For the reasons set forth below, the amended complaint will be dismissed in part.

# I.    <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A complaint that includes only "'labels and conclusions,'. . . 'a formulaic recitation of the elements of a cause of action' . . [or] 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Although courts still have an obligation "to construe "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

# II.    <u>Facts</u>

The facts are taken from the amended complaint and from exhibits that are referenced in the amended complaint and attached to the original complaint.

On October 2, 2015, during his recreation period at Corrigan-Radgowski, the plaintiff suffered an injury to his right shoulder and left knee during a basketball game.  *See* Am. Compl.,

Doc. No. 13, at 2 ¶ 12. A correctional officer escorted the plaintiff to the medical department. *Id.* at 4 ¶ 17. A nurse examined the plaintiff and observed his knee "pop out & back." *Id.* The nurse contacted the on-call physician, Dr. Freston, by telephone regarding the plaintiff's injury. *Id.* Dr. Freston prescribed crutches, ice, and pain medication to be used by the plaintiff until a physician was able to evaluate him. *Id.*; Compl., Doc. No. 1, at 19-22, Ex. 1.

The plaintiff was unable to raise his right shoulder past 90 degrees and it was very painful. Am. Comp. at 4 ¶ 19. On October 3, 2015, the plaintiff submitted written requests to a nurse for treatment of the painful injuries to his shoulder and his knee and verbally informed prison officials and nurses that his left knee was very painful. *Id.* at 4 ¶ 19; at 5 ¶ 23.

Dr. Figura did not examine the plaintiff until October 14, 2015. *Id.* at 5 ¶ 24. During that appointment, Dr. Figura prescribed a brace to be worn on the plaintiff's left knee and injected his right shoulder with cortisone. *Id.*; Compl., at 23-25, Exs. 2, 3. Although the plaintiff made Dr. Figura aware that his knee was still very painful and that he had not undergone x-rays, she did not enter an order for x-rays or submit a request for approval of an MRI until August 12, 2016. Am. Comp. at 5 ¶ 24. On October 22, 2015, Dr. Figura issued the plaintiff a bottom bunk pass. *Id.* ¶ 25; Compl., at 26-27, Ex. 4.

On March 19, 2016, Dr. Figura issued the plaintiff a pass for a cane. Compl., at 29, Ex. 6. On August 12, 2016, Dr. Figura examined the plaintiff's right shoulder and left knee, administered a cortisone shot to the plaintiff's right shoulder and indicated that she would check to see whether she had already submitted a request for approval of an MRI of the plaintiff's knee. *Id.* at 32, Ex. 9.

On September 15, 2016, the plaintiff underwent an MRI of his left knee. Am. Comp. at 5 ¶ 26. The MRI showed an old complete tear of the anterior cruciate ligament ("ACL"), scarring

to the posterior cruciate ligament, and no tear of the meniscus. *Id.* ¶ 26. On September 23, 2016, Dr. Figura reviewed the results of the MRI with the plaintiff and informed him that his knee was too damaged to be surgically repaired and recommended that the plaintiff undergo physical therapy. *Id.* ¶ 27. During the appointment, the plaintiff told Dr. Figura that the cortisone shot that she had administered to his right shoulder was no longer effective and both his knee and shoulder caused him severe pain. *Id.* ¶ 28. Dr. Figura indicated that she would submit a request for the plaintiff to undergo an MRI of his right shoulder. *Id.* The plaintiff never underwent an MRI of his right shoulder. *Id.*

The plaintiff's medical records documenting his visit with Dr. Figura on September 23, 2016 reflect a notation that Dr. Figura sent an email to the Utilization Review Committee ("URC") seeking approval for an orthopedist to examine and evaluate the injury to the plaintiff's left knee. Compl., at 35, Ex. 12. On October 3, 2016, the plaintiff filed a request for a Health Services Review, seeking to be seen by an orthopedist. Am. Comp. at 5 ¶ 29. On October 26, 2016, the plaintiff learned that Dr. Figura had submitted a request to the URC seeking approval for an examination of the plaintiff's knee by an orthopedist. *Id.* ¶ 30; Comp., at 36, Ex. 13.

On December 21, 2016, the plaintiff participated in a tele-med appointment with an orthopedist to discuss whether he wanted to undergo surgical repair of the torn ACL in his left knee. *Id.* at 6 ¶ 31; Compl., Ex. 14 at 38. The plaintiff indicated that he was interested in having the surgery. Am. Comp. at 6 ¶ 31. Medical officials scheduled the plaintiff to be examined by an orthopedist at MacDougall-Walker before performing the ACL reconstruction of the plaintiff's left knee. *Id.*

On March 27, 2017, at the University of Connecticut Health Center ("UCONN"), an orthopedist surgically repaired the torn ACL in the plaintiff's left knee. Compl.,

at 39-40, Ex. 15.[1]  Later that day, UCONN medical providers discharged the plaintiff to Corrigan-Radgowski.  Am. Compl. at 6 ¶ 36.

Medical providers at Corrigan-Radgowski placed the plaintiff in a cell in the medical unit.  *Id.*  The cell smelled of urine and feces and the mattress was stained with what looked like feces.  *Id.* ¶ 37.  The plaintiff asked a correctional officer to move him to another cell or to call someone who could clean up the cell that he was in.  *Id.*  The officer indicated that his request would have to wait until the following day.  *Id.*  Two days later, the plaintiff asked Nurse Cara for a stretch band to perform his physical therapy exercises.  *Id.* at 7 ¶ 46.  Nurse Cara stated that the plaintiff was not allowed to use a stretch band.  *Id.*

On or about April 3, 2017, the plaintiff asked Nurse Amy if he could be moved to a different cell that did not smell of urine and feces and had a medical bed with a mattress that was not stained.  *Id.* at 6 ¶ 38.  Nurse Amy told the plaintiff there was no other cell to move him to. *Id.*  The plaintiff then requested that a medical tier worker clean his cell.  *Id.*  Nurse Amy responded that she would see what she could do.  *Id.*  No one cleaned the plaintiff's cell or provided him with cleaning supplies prior to his discharge from the medical unit on June 23, 2017.  *Id.* at 7 ¶ 39.

On June 23, 2017, an orthopedist at UCONN cleared the plaintiff to start performing leg curls and extensions and to engage in light jogging.  Compl., at 41-43, Ex. 16.[2]  On or about July 3, 2017, the plaintiff's knee popped out and back as he was jogging in the gym.  Am. Compl. at 6

---

[1]  The plaintiff refers to the date of his surgery as June 23, 2017. Am. Compl. at 6  ¶ 32. It is evident from medical records attached as Exhibit 15 to the Complaint, however, that he underwent ACL reconstruction surgery on March 27, 2017.

[2]  The plaintiff refers to the date that he was cleared by an orthopedist to start engaging in exercises and physical activity as July 23, 2017. Am. Comp. at 6 ¶ 33.  It is clear from Exhibit 16 to the Complaint that the date was June 23, 2017.

¶ 34.  When the plaintiff informed Nurse Cara what had happened, she instructed him to stop all physical therapy until he could speak to Dr. Figura.  *Id.*

On October 3, 2015, May 31, 2017, July 17, 2017, and August 4, 2017, the plaintiff submitted requests for examination and treatment of the injury that he had sustained to his right shoulder on October 2, 2015.  *Id.* at 4 ¶ 19.  Dr. Figura was aware of the plaintiff's symptoms but failed to treat the plaintiff's shoulder injury beyond administering cortisone shots. *Id.* at 4 ¶ 19 and at 5 ¶ 28.

On August 6, 2017, Dr. Figura examined the plaintiff's left knee.  *Id.* at 6 ¶ 35.  The plaintiff asked to be put on a list to see an orthopedist.  *Id.*  Dr. Figura stated that "her hands [were] tied, [and] other [than] increasing his pain medication there was nothing she could do at this time."  *Id.*  She also indicated that recovery from a surgical repair of an ACL can take time. *Id.*

On November 26, 2018, January 16, 2019, and March 5, 2019, the plaintiff submitted requests to be treated for pain in his knee.[3]  *Id.* at 7 ¶ 42.  On July 16, 2019, the plaintiff sent an inmate request to Warden Barron indicating that he needed to be placed on the list to see a medical provider for examination and treatment of an injury to his left knee.  *Id.* at 4 ¶ 20.  The plaintiff also sent Warden Barron a copy of a request for a Health Services Review he submitted on that same date.  *Id.* at 7 ¶ 40; Compl. at 64, Ex. 21.  The plaintiff informed Warden Barron that he had not been seen by anyone in the medical unit for ten months.  Am. Compl. at 4 ¶ 20. Warden Barron responded by stating that a staffing shortage had caused a delay in treating patients and requested that the plaintiff be patient.  *Id.*; Compl. at 64, Ex. 21.

---

[3]The plaintiff had been transferred from Corrigan-Radgowski to MacDougall-Walker prior to the time these requests were made.  *See* Compl. at 57, Ex. 21.

On August 5, 2019, the plaintiff sent a request to Chief of Regional Operations Shea. Am. Compl. at 7 ¶ 45. He never received a response to this request. *Id.* On September 20, 2019, the plaintiff sent a request to Nurse Walker asking why he had not received a response to his July 16, 2019 Health Services Review request. *Id.* at 7 ¶ 41. Nurse Walker did not respond to the request. *Id.*

On January 27, 2020, the plaintiff filed another request for a Health Services Review due to the lack of medical care for his serious medical needs. *Id.* at 7 ¶ 42. On March 11, 2020, the plaintiff filed a level two appeal form because his January 27, 2020 request for a Health Services Review had not been resolved. *Id.* at 7 ¶ 43. On March 11, 2020, the plaintiff filed another request for a Health Services Review. *Id.* at 7 ¶ 44.

## III. Discussion

The plaintiff asserts federal constitutional claims and state law claims. He contends that Drs. Freston and Figura delayed treatment and physical therapy for the injuries to his left knee and right shoulder in violation of the Eighth Amendment; Nurse Amy confined him in an unsanitary cell in the medical unit after his knee surgery in March 2017 in violation of the Eighth Amendment; Nurse Walker and Chief of Regional Operations Shea refused to respond to his inmate requests and grievances in violation of the Fourteenth Amendment; the failure of Drs. Freston and Figura and Nurses Cara and Amy to follow or issue orders, examine, and treat him in a timely manner constituted the tort of negligence; and the failure of Nurse Amy to arrange to have his cell in the medical unit cleaned or to permit him to clean his cell constituted the tort of "inhumane conditions."

### A. Federal Claims Against Defendants – Official Capacities

The plaintiff seeks declaratory and injunctive relief and compensatory and punitive

damages. Am. Compl. at 10-12. He sues the defendants in their individual and official capacities.[4]

### 1.     __Monetary Relief__

To the extent the plaintiff seeks compensatory and punitive damages from the defendants in their official capacities for violations of his federal constitutional rights, those requests for relief are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (the Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The requests seeking compensatory and punitive damages from the defendants in their official capacities for violations of the plaintiff's Eighth and Fourteenth Amendment rights are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### 2.     __Declaratory Relief__

The plaintiff seeks a declaratory judgment that Drs. Freston, Dr. Figura, and Nurse Amy violated his rights under the Eighth Amendment, and that Nurse Walker and Chief of Regional Operations Shea violated his rights under the Fourteenth Amendment. Am. Compl. at 10-11. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).

---

[4] Although the plaintiff indicates he is suing Dr. Freston, Nurse Amy, Nurse Cara, and Nurse Walker in their individual capacities, his request for relief seeks, among other things, declaratory relief regarding claims against six of the seven defendants. *See* Am. Compl. at 10-11. Consequently, the Court will proceed on the basis that the plaintiff is suing the defendants in both their individual and official capacities.

The plaintiff's request for declarations that the defendants violated his federal constitutional rights in the past are barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief"). Furthermore, if the plaintiff were to prevail on his Eighth or Fourteenth Amendment claims, the Court necessarily would determine that the defendants had violated his constitutional rights. Thus, separate awards of declaratory relief are unnecessary. Accordingly, the requests for declarations that the defendants violated his federal constitutional rights are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Injunctive Relief

The plaintiff seeks orders directing Dr. Figura and Chief of Regional Operations Shea to arrange for him to undergo an MRI of his right shoulder and left knee, to be seen by an orthopedist, to ensure that any recommendations for physical therapy and equipment necessary for the treatment of his injuries to his left knee and right shoulder are followed, and to order other Department of Correction officials at MacDougall-Walker to refrain from transferring him to another facility, searching his cell, or issuing him disciplinary reports for retaliatory purposes. Am. Compl. at 11. As indicated above, a court may enter an order for prospective injunctive relief against a state official in his official capacity only if that state official is engaged in an ongoing violation of a plaintiff's constitutional rights. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002) (internal quotation marks mitted) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit [for injunctive relief], a court need only conduct a "straightforward inquiry into whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.").

There are no allegations that any defendant engaged in a retaliatory search of the plaintiff's cell, attempted to transfer him to another facility, or issued him a disciplinary report. Thus, the plaintiff has not alleged that those requests for relief relate to the underlying allegations in the complaint or that he will be subject to ongoing violations of his constitutional rights as a result of retaliatory conduct by the defendants. The request for injunctive relief in the form of orders that Dr. Figura and Chief of Regional Operations Shea ensure that prison officials at MacDougall-Walker refrain from engaging in retaliatory transfers, cell searches, or the issuance of false disciplinary reports are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

To the extent the plaintiff seeks injunctive relief from Dr. Figura in the form of orders for medical treatment for his shoulder and knee injuries, the requests are moot. The Second Circuit has held that an inmate's requests for prospective injunctive relief from correctional staff in connection with conditions of confinement at a particular correctional institution become moot when the inmate is discharged from that institution, is transferred to a different institution, or has received the relief requested. *See Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (internal quotation marks omitted) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief."); *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility.").

Because the plaintiff is currently confined at MacDougall-Walker, his requests for medical treatment from Dr. Figura, who is a physician assigned to Corrigan-Radgowski, are dismissed as moot. *See* 28 U.S.C. § 1915A(b)(1). In addressing the Eighth Amendment claim

that the defendants were deliberately indifferent to the plaintiff's medical needs, the Court will consider only the request for injunctive relief for medical treatment that is asserted against Chief of Regional Operations Shea in her official capacity.

### B.    Fourteenth Amendment – Due Process Claim

The plaintiff contends that the failure of Nurse Walker and Chief of Regional Operations Shea to respond to his inmate requests and requests for Health Services Review after his transfer to MacDougall-Walker violated his right to due process.  The Second Circuit has held that neither state directives nor "state statutes … create federally protected due process entitlements to specific state-mandated procedures." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003). Thus, allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights.  *See Swift v. Tweddell,* 582 F. Supp. 2d 437, 445–46 (W.D.N.Y. 2008) ("It is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim."); *Fernandez v. Armstrong*, No. 3:02 CV 2252 CFD, 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005) ("This district has previously held that failure of a correctional official to comply with the institutional grievance procedures is not cognizable in an action filed pursuant to 42 U.S.C. § 1983, unless the action caused the denial of a constitutionally or federally protected right.").  In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341–42 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address Torres's grievances by conducting a thorough investigation to his satisfaction

does not create a cause of action for denial of due process because Torres was not deprived of a protected liberty interest.").

The plaintiff's allegations that Nurse Walker and Chief of Regional Operations Shea failed to properly process or respond to his informal inmate requests or formal requests for Health Services Review do not rise to the level of a due process violation under the Fourteenth Amendment. *See Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."). The Fourteenth Amendment due process claim asserted against Nurse Walker and Chief of Regional Operations Shea in their individual capacities is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.      Eighth Amendment – Conditions of Confinement Claim

The plaintiff alleges that upon his placement in a cell in the medical unit at Corrigan-Radgowski after his surgery on March 27, 2017, he noticed that it smelled like urine and feces and the mattress appeared to be stained with feces. The plaintiff remained in that cell for approximately three months.

Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "wanton and unnecessary" pain or result in the "serious deprivation[] of basic human needs . . . or the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "basic human need[ ]" or

posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, they knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. <u>*See*</u> <u>*Farmer*</u>, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

The Second Circuit directs district courts to evaluate the "duration and severity" of unsanitary conditions on a case-by-case basis when evaluating whether conditions of confinement amount to a constitutional violation. *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015). The plaintiff has alleged that he remained in a cell in the medical unit that smelled of feces and urine with a mattress that appeared to be stained with feces for approximately three months. At the time, he was recovering from surgery. The Court concludes that the plaintiff has plausibly alleged that the unsanitary conditions posed a serious risk of harm to his health. *See, e.g.*, *Reid v. Nassau Cty. Sheriff's Dep't*, No. 13-CV-1192 (SJF) (SIL), 2014 WL 4185195, at *14–15 (E.D.N.Y. Aug. 20, 2014) ("Similarly, while the denial of cleaning supplies, itself, may not constitute a constitutional deprivation, . . . when combined with chronic or prolonged

unsanitary conditions, such as the presence of bodily waste on the walls, floors and/or ceilings of the cells, the denial of adequate cleaning supplies may rise to the level of a constitutional deprivation.").

On April 3, 2017, the plaintiff asked Nurse Amy if he could be moved to a different cell but no cell was available.  He also asked Nurse Amy if she could arrange to have his cell cleaned by a tier worker.  Nurse Amy stated that she would see what she could  do.  No correctional or medical staff member ever cleaned the plaintiff's cell.  Nor did Nurse Amy provide plaintiff with the necessary supplies to clean the cell himself.  The plaintiff has plausibly alleged that Nurse Amy was aware of the risk posed by the unsanitary conditions of his cell but failed to take steps to remedy the situation.  The Court will permit this Eighth Amendment conditions claim to proceed against Nurse Amy in her individual capacity for further development of the record.

### D.    <u>Eighth Amendment – Medical Needs</u>

The plaintiff alleges that after he sustained injuries to his knee and shoulder on October 2, 2015 at Corrigan-Radgowski, Drs. Figura and Freston were deliberately indifferent to his need for treatment due to pain and lack of mobility caused by the injuries.  After his transfer to MacDougall-Walker, the plaintiff made Warden Barron, Nurse Walker, and Chief of Regional Operations Kirsten Shea aware of his painful and debilitating knee injury and shoulder injury, but they failed to provide or facilitate the provision of treatment for those injuries.

The Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs." *Estelle v Gamble*, 429 U.S. 97, 104 (1976).  An inmate must meet two elements to state a claim that a prison official or medical provider was deliberately indifferent to his medical needs.  The objective element requires the inmate to assert facts to demonstrate that his medical need or condition is serious.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal

quotation marks omitted) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain"). In determining the seriousness of a medical condition, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted).

The second element is subjective. To meet this element, the inmate must allege that the prison official or medical provider was actually aware that his actions or inactions would cause a substantial risk of serious harm. *See Hill*, 657 F.3d at 122. Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). Mere negligent conduct, however, does not constitute deliberate indifference. *See Hill*, 657 F.3d at 123 (quoting *Estelle*, 429 U.S. at 106) ("'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'"). Nor does a difference of opinion between a medical provider and an inmate regarding a diagnosis or appropriate medical treatment. *Chance*, 143 F.3d at 703.

The plaintiff alleges that he suffered from painful injuries to his left knee and right shoulder for approximately four years. His knee injury made it difficult for him to move around and he was unable to raise his right arm past 90 degrees due to his shoulder injury. The Court concludes that the plaintiff has plausibly alleged that he suffered from serious medical injuries that caused him chronic pain while he was under the care of Dr. Figura at Corrigan-Radowski from October 2015 to October 2018 and while he was confined at MacDougall-Walker from

November 2018 to March 2020.  *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (chronic

pain need not be "extreme" or "at the limit of human ability to bear" to meet objective element of

deliberate indifference to medical needs claim); *Sereika v. Patel*, 411 F. Supp. 2d 397, 406

(S.D.N.Y. 2006) ("Sereika's allegation that he experienced severe pain as a result of the alleged

delay in treatment, together with his allegation that the alleged delay in treatment resulted in

reduced mobility in his arm and shoulder, raise issues of fact as to whether his shoulder injury

constitutes a sufficiently serious medical condition to satisfy the objective prong of the

deliberative indifference standard.").  Having  concluded that the plaintiff's allegations meet the

objective element of the Eighth Amendment standard, the Court considers whether the plaintiff

has alleged facts to meet the subjective element.

### 1.  Dr. Freston

The only mention of Dr. Freston is in connection with orders that he or she issued as the

on-call physician at Corrigan-Radgowski during the night of October 2, 2015, when the plaintiff

injured his knee and shoulder playing basketball.  Dr. Freston prescribed crutches, ice, and pain

medication for the plaintiff until he could be physically examined by a physician at Corrigan-

Radgowski.  There are no allegations that Dr. Freston was a physician assigned to Corrigan-

Radgowski, that the plaintiff otherwise made Dr. Freston aware of his need for treatment or

examination, or that Dr. Freston refused or neglected to examine or treat the plaintiff during his

confinement at either Corrigan-Radgowski or MacDougall-Walker.  The allegations regarding

treatment provided by Dr. Freston on October 2, 2015 do not state a claim of deliberate

indifference to the plaintiff's knee or shoulder injuries.  The Eighth Amendment claim asserted

against Dr. Freston in his or her individual capacity is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## 2.   Dr. Figura

The plaintiff alleges that as of October 14, 2015, Dr. Figura was aware of his painful knee and shoulder injuries and the lack of mobility of both joints due to the injuries but neglected to arrange to have his knee or shoulder x-rayed or seek approval for an MRI of his shoulder.  Dr. Figura waited ten months to seek approval for an MRI of the plaintiff's left knee.  The plaintiff underwent an MRI of his left knee on September 15, 2016 which revealed a complete tear of the ACL.  After reviewing the MRI, Dr. Figura arranged for the necessary consultations and evaluations prior to the ACL reconstruction surgery that occurred on March 27, 2017.  After the plaintiff re-injured his left knee in July 2017, however, Dr. Figura refused to provide or arrange for treatment of that injury other than prescribing medication for pain and instructing the plaintiff to engage in physical therapy.  The plaintiff's medical records attached as exhibits to the Complaint and referenced in the Amended Complaint reflect that Dr. Figura did treat the plaintiff's shoulder injury with cortisone shots from October 14, 2015 to August 12, 2016.  In September 2016, Dr. Figura indicated that she would submit a request for approval of an MRI for the plaintiff's shoulder.  The plaintiff did not undergo an MRI of his shoulder.  The plaintiff alleges that he sought further evaluation and treatment of his painful shoulder injury in 2017 but Dr. Figura failed to respond to his requests.  The Court will permit the allegations of deliberate indifference to the plaintiff's knee and shoulder injuries to proceed against Dr. Figura in her individual capacity for further development of the record.[5]

---

[5]  It is apparent, given the date on which the plaintiff filed this action, that some of the allegations related to Dr. Figura's failure to treat the plaintiff's knee and shoulder injuries in 2015 and 2016 may be barred by the three-year statute of limitations applicable to section 1983 actions.  *See Lounsbury v. Jeffries,* 25 F.3d 131, 134 (2d Cir.1994) (applying Conn. Gen. Stat. § 52–577 three-year statute of limitations to § 1983 actions).  The Court declines to address this affirmative defense *sua sponte*.  Defendant Figura is, of course, free to assert the defense in a responsive pleading or by motion pursuant to Fed. R. Civ. P. 12(b)(6).

### 3.     Warden Barron, Operations Chief Shea, Nurse Walker

The plaintiff alleges that during his confinement at MacDougall-Walker from July 2019 to September 2019, he made Warden Barron, Regional Operations Chief Shea, and Nurse Walker aware of the fact that he had been requesting an examination and treatment for his painful knee and shoulder injuries for ten months.  He informed these defendants that although members of the nursing staff had seen him on several occasions, a medical provider/prescriber had not examined or evaluated, treated or referred him for diagnostic testing of his painful knee and shoulder injuries.  On July 16, 2019, Warden Barron suggested that the plaintiff be patient about receiving treatment because the medical department had been short-staffed.  At this early stage of the litigation, the Court will assume that Nurse Walker and Regional Operations Chief Shea received and read the plaintiff's requests for treatment but failed to take any action in response to the requests.  *See Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (an allegation that the plaintiff sent a letter to the warden was sufficient at the initial stages of action to support the inference that the warden received and read the letter and was aware of  its contents).  Accordingly, the Court will permit the allegations of deliberate indifference to the plaintiff's knee and shoulder injuries to proceed against Warden Barron and Nurse Walker in their individual capacities and against Regional Operations Chief Shea in her individual capacity and in her official capacity to the extent that the plaintiff seeks injunctive relief pertaining to medical treatment for these injuries.

### E.     State Law Claims

The plaintiff describes specific instances of conduct by Nurse Amy, Nurse Cara, and Dr. Figura as negligent. Am. Compl. at 7-8 ¶¶ 46-49.  In his list of claims, he generally asserts that the failure of Dr. Freston, Dr. Figura, Nurse Amy, and Nurse Cara to follow orders, examine,

treat or "write orders" in a timely manner constituted negligence under state law. *Id.* at 10 ¶ 62. He also contends that Nurse Amy's failure to arrange to have his cell in the medical unit cleaned constituted the tort of "inhumane conditions" under Connecticut law. *Id.* ¶ 60.

### 1.    Inhumane Conditions

Research has revealed no Connecticut cases identifying a tort of "inhumane conditions." Accordingly, the claim that Nurse Amy's conduct in failing to arrange to have his cell in the medical unit cleaned or to permit the plaintiff to clean his cell constituted the tort of "inhumane conditions" is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### 2.    Negligence – Individual Capacity Claims

The plaintiff alleges that Nurse Cara was negligent when she denied his request to be provided with a stretch band to perform exercises on March 29, 2017, and when she instructed him to stop engaging in physical therapy after he informed her that he had suffered a new injury to his right knee on or about July 3, 2017. The plaintiff alleges that on April 3, 2017, Nurse Amy was negligent when she refused to move him to a cell with a "medical bed" and that Dr. Figura was negligent on August 6, 2017 when she informed him that she could not refer him to an orthopedist to be examined and could only increase his pain medication. The plaintiff generally asserts that Dr. Freston was negligent in failing to treat him in a timely manner.

In Connecticut, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a). The Connecticut Supreme Court has explained that section 4–165 means that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003). A state employee may be held personally liable, however, for

acts in the scope of his or her employment when the employee's conduct is "wanton, reckless, or malicious"—which goes beyond negligence and denotes "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379 (2002) (internal quotation marks omitted).

The allegations of negligence against Nurse Amy, Nurse Cara, Dr. Figura, and Dr. Freston, who are state medical employees or officials, concern actions and/or inactions within the scope of their employment. There are no allegations that the conduct of these defendants was "highly unreasonable" or that it involved "an extreme departure from ordinary care." *Id.* Accordingly, the claims that Nurse Amy, Nurse Cara, Dr. Figura, and Dr. Freston, in their individual capacities, engaged in negligent conduct are barred by Conn. Gen. Stat. § 4-165(a) and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3.     <u>Negligence - Official Capacity Claims</u>

"The doctrine of sovereign immunity provides that the state is immune from suit unless it consents to be sued." *Jacques v. Conn. Dep't of Corr.*, No. KNL-CV-175015515S, 2017 WL 6947808, at *3 (Conn. Super. Ct. Dec. 12, 2017) (citing *Miller*, 265 Conn. at 313). Sovereign immunity also bars suits seeking monetary damages against a state official in his or her official capacity. *See Bloom v. Gershon,* 271 Conn. 96, 107, 856 A.2d 335, 341 (2004) (internal quotation marks omitted) ("We have also recognized that because the state can act only through its officers and agents, a suit against a state officer [or agent] concerning a matter in which the officer [or agent] represents the state is, in effect, against the state.").

There are three exceptions to the bar on suits against the state and state officials:

(1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has violated the plaintiff's constitutional rights; and (3) when an

action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority.

*Columbia Air Servs., Inc. v. Dep't of Transp.*, 293 Conn. 342, 349 (2009) (internal quotation marks and citations omitted). There has been no statutory or voluntary waiver of sovereign immunity and the plaintiff has not alleged that he has received permission from the Office of the Claims Commissioner to bring claims for damages against the State of Connecticut or its employees pursuant to Connecticut General Statutes § 4-160(a). As a result, the plaintiff's claims for monetary damages based on the negligent conduct of Nurses Amy and Cara and Drs. Figura and Freston in their official capacities are barred by sovereign immunity and are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

The plaintiff's claim seeking a declaration that Nurses Amy and Cara and Drs. Figura and Freston engaged in negligent conduct in their official capacities is also barred by sovereign immunity. There are no allegations that the negligent actions or omissions of Nurses Amy and Cara and Drs. Figura and Freston rose to the level of deliberate indifference in violation of the plaintiff's constitutional rights or constituted wrongful conduct intended "to promote an illegal purpose in excess of [their] statutory authority." *Columbia Air Servs., Inc.*, 293 Conn. at 349. Thus, the request for declaratory relief related to the alleged negligence of these defendants does not meet either the second or the third exception to the doctrine of sovereign immunity. *See, e.g.*, *Morales-Rojas v. Ruiz*, No. 3:17cv1434 (MPS), 2018 WL 401531, at *5 (D. Conn. Jan. 12, 2018) (concluding that "the exception to the doctrine of sovereign immunity is not applicable to the claim for injunctive relief related to the negligent conduct of Dr. Ruiz" in diagnosing and treating the plaintiff's broken foot). The request for declaratory relief related to the alleged

negligent conduct of Nurses Amy and Cara and Drs. Figura and Freston is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**ORDERS**

The Court enters the following Orders:

**(1)** Pursuant to its review of the Amended Complaint, [ECF No. 14], under 28 U.S.C. § 1915A, the following claims are **DISMISSED**:

- all claims seeking monetary damages against the defendants in their official capacities;

- all claims for declaratory relief;

- all claims for injunctive relief pertaining to retaliatory transfers, cell searches, or the issuance of disciplinary reports at MacDougall-Walker;

- the claim for injunctive relief in the form of an order that Dr. Figura arrange for the plaintiff to receive medical treatment and physical therapy;

- the Eighth Amendment deliberate indifference to medical needs claim against Dr. Freston in his individual capacity;

- the Fourteenth Amendment due process claims against Nurse Walker and Chief of Regional Operations Shea in their individual capacities;

- all state law claims.

Thus, all claims against Dr. Freston and Nurse Cara have been **DISMISSED**.

**(2)** The following claims will proceed at this time:

- the Eighth Amendment conditions of confinement claim against Nurse Amy in her individual capacity;

- the Eighth Amendment deliberate indifference to medical needs claims against Dr. Figura, Warden Barron, and Nurse Walker in their individual capacities and against Regional

Operations Chief Shea in her individual capacity and in her official capacity to the extent that the plaintiff seeks injunctive relief pertaining to medical treatment for his knee and shoulder injuries.

(3) Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the Amended Complaint and this Order on Regional Operations Chief Kirsten Shea by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(4) The Clerk shall verify the current work addresses of: Dr. Ilona Figura, Nurse Rose Walker, Nurse Amy, Warden Barone, and Chief of Regional Operations Kirsten Shea and mail a copy of the Amended Complaint, this Order, and a waiver of service of process request packet to each defendant in her individual capacity at her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) Defendants Figura, Walker, Amy, Barone, and Shea shall file their response to the Amended Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(6)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests should not be filed with the Court.

**(7)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(8)** The Clerk shall send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

**(9)** The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Hartford, Connecticut this   7th    day of October, 2020.

_____/s/  DJS_____
                          Dominic J. Squatrito
                          United States District Judge